IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANGÉLICA CRISTINA
CARABALLO-MELIÁ, et al.,

       Plaintiffs

          v.

ALBERT SUÁREZ-DOMÍNGUEZ, et al.,

       Defendants

CIVIL NO. 08-2205 (JP)

**OPINION AND ORDER**

Before the Court is Defendant Albert Suárez-Domínguez's ("Suárez") motion for summary judgment (**No. 97**), and Plaintiffs Angélica Caraballo-Meliá, Eduardo Peña-Meliá, and Eddie Peña-Martínez's opposition thereto (No. 115). Plaintiffs brought the instant action alleging medical malpractice leading to the death of Verónica Meliá ("Meliá"). Plaintiffs allege that Defendant Suárez acted negligently in the evaluation and preparation of Meliá for gastric by-pass surgery, and in the post-operative care given to Meliá. Defendant Suárez moves for summary judgment arguing that he is immune from the medical malpractice claim under P.R. Laws Ann. Tit. 26, § 4105. For the reasons stated herein, Defendant's motion is hereby **DENIED.**

CIVIL NO. 08-2205 (JP)          -2-

## I.    MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE

The following material facts were deemed uncontested by all parties hereto at the March 20, 2009, Initial Scheduling Conference (No. 33).

1.    Defendant Suárez is a resident and citizen of the Commonwealth of Puerto Rico where he has a conjugal partnership with his wife.

2.    Defendant Suárez is a general surgeon authorized to practice medicine in Puerto Rico.

3.    Defendant Suárez is a professor of surgery at the University of Puerto Rico Medical Sciences Department.

4.    At all relevant times, Defendant Suárez was an attending physician participating as part of the University Intramural Plan of the University of Puerto Rico at the UPR Hospital in Carolina.

5.    Defendant Suárez has an office for the private practice of medicine currently located at Torre Auxilio Mutuo, and previously located at Plaza El Amal, Suite 204, 282 Jesús T. Piñeiro Avenue, San Juan, Puerto Rico.

6.    Defendant Servicios Médicos Universitarios, Inc. ("SMU"), is a Puerto Rico corporation that operates and administers Hospital UPR Dr. Federico Trilla ("UPR Hospital").

CIVIL NO. 08-2205 (JP)          -3-

7.   SIMED is a Puerto Rico insurance syndicate established by law that had issued and in full force and effect insurance policies for Defendants Suárez and SMU.

8.   On August 14, 2002, Meliá visited Defendant Suárez's private office at El Amal for the first time.

9.   On that visit, Meliá referred to Defendant Suárez a history of diabetes mellitus I and II, high blood pressure under medication, and that she had been a chronic smoker. At the time, she weighed 307 pounds and was 5'7". Her body mass index was 49, and therefore was categorized as morbid obesity.

10.  Defendant Suárez sent to Triple S (Meliá's medical plan) a request for pre-certification of bariatric surgery dated August 16, 2002 from his private medical office at El Amal.

11.  On September 27, 2002, Triple S certified to Defendant Suárez, as a service provider of said medical plan, that the "gastric Stapling, +/- Bypass" procedure to be performed on Meliá had been approved.

12.  On October 10, 2002, Meliá was seen by Defendant Suárez again at his private office at El Amal.

13.  Meliá signed the informed consent for the gastric bypass surgery.

CIVIL NO. 08-2205 (JP)               -4-

14.    On October 25, 2002, Meliá underwent a gastric bypass
       surgery for weight loss, performed by Defendant Suárez at
       the Defendant UPR Hospital.

15.    After said surgery, on October 28, 2002, an upper-gastro
       intestinal series (X Rays) performed on Meliá showed that
       the anastomosis (the junction where one end of the small
       bowel was reunited to the other) created by the surgery
       was obstructed.

16.    On October 31, 2002, another upper gastro intestinal X-Ray
       series performed on Meliá revealed again a complete
       obstruction of the anastomosis.

17.    On November 1, 2002, a gastric endoscopy performed on
       Meliá revealed that she was suffering from erosive
       gastritis.

18.    On November 2, 2002, Meliá developed bloody vomiting,
       tachypnea (fast heart rhythm) and was diagnosed with
       pneumonia (bacterial lung infection).

19.    Meliá started feeling abdominal pain and became acutely
       ill on November 6, 2002.   On that same date, an
       exploratory laparotomy was performed.   In that surgery,
       Defendant Suárez found that Meliá's gastric pouch had a
       perforation.

20.    After such surgery, Meliá went into hypovolemia and
       remained at the UPR Hospital until her death on

CIVIL NO. 08-2205 (JP)                -5-

December 19, 2002; that is, after being hospitalized for fifty-two days, including fifty days in the intensive care unit.

21. An autopsy protocol report was prepared by Dr. Yocasta Brugal.

22. At all relevant times, all the medical services rendered Meliá at the UPR Hospital were charged to her medical plan by the University's Intramural Plan.

23. All the medical equipment, supporting staff and facilities used in the medical treatment given to Meliá were provided by the UPR Hospital.

24. At all relevant times, Defendant Suárez carried medical malpractice insurance with SIMED.

25. SIMED is only and exclusively liable according to the terms and conditions of the insurance policy issued on behalf of Defendant Suárez, policy number PRM-3190. This policy has an effective date of September 30, 2004 to September 30, 2005, with a retroactive date as of September 30, 1991.

26. SIMED is only and exclusively liable according to the terms and conditions of the insurance policy issued on behalf of Servicios Médicos Universitarios, Inc., d/b/a Hospital de Área de Carolina Dr. Federico Trilla, policy number HPL-90. This policy has an effective date

CIVIL NO. 08-2205 (JP)          -6-

> from March 27, 2002 to March 27, 2003, with a retroactive
> date as of March 12, 1999.

The following facts are deemed uncontested by the Court because they were included in the motion for summary judgment and opposition and were agreed upon, or they were properly supported by evidence and not genuinely opposed.

a.   Defendant Suárez is a Board Certified Surgeon.

b.   Hospital Federico Trilla in Carolina, Puerto Rico serves as part of the Medical Sciences Campus of the UPR.

c.   Defendant Suárez is a professor of surgery at the University of Puerto Rico Medical Sciences Department.

d.   At all relevant times, Defendant Suárez was an attending physician participating as part of the University Intramural Plan of the University of Puerto Rico at the UPR Hospital in Carolina.

e.   On October 25, 2002, Meliá underwent a gastric bypass surgery for weight loss, performed by Defendant Suárez at Defendant UPR Hospital.

f.   At all relevant times, all the medical services rendered Meliá at the UPR Hospital were charged to her medical plan by the University's Intramural Plan.

g.   All the medical equipment, supporting staff and facilities used in the medical treatment given to Meliá were provided by the UPR Hospital.

CIVIL NO. 08-2205 (JP)          -7-

## II.   **LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT**

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Zambrana-Marrero v. Suárez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993); Canal Ins. Co. v. Benner, 980 F.2d 23, 25 (1st Cir. 1992). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. See Mack v. Great Atl. and Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989).

CIVIL NO. 08-2205 (JP)          -8-

On a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. See Anderson, 477 U.S. at 248; Celotex, 477 U.S. at 324; Goldman, 985 F.2d at 1116.

## III. **ANALYSIS**

Defendant argues that Plaintiffs' claims alleging medical malpractice must fail because Plaintiffs do not have a cause of action against Defendant Suárez since he is entitled to immunity under P.R. Laws Ann. Tit. 26, § 4105 (1989) ("Section 4105"). The Court will now consider Defendant's argument in turn.

### A. **Defendant Suárez's Immunity Defense**

Section 4105 provides immunity for doctors who are employees of the government. Lind Rodríguez v. E.L.A., 112 D.P.R. 67 (1982). This immunity extends to doctors who in addition to working for the Government also have their own private practice. Flores Román v. Ramos González, 127 D.P.R. 601 (1990). Initially, to be protected under the statute, the individual seeking immunity must be an

CIVIL NO. 08-2205 (JP)          -9-

employee of the Government as opposed to an independent contractor.[1]
Id.  However, for the immunity provision to apply, in addition to
being an employee of the Government, the individual who works for the
Government must be acting as an employee of the Government at the
time of the events which gave rise to the claim.  See Frances-Colón
v. Ramírez, 107 F.3d 62 (1st Cir. 1997); Lind Rodríguez v. E.L.A.,
112 D.P.R. 67 (1982) (Section 4105 "provides absolute immunity for
Commonwealth-employed physicians for their tortious acts *in the
course of their employment*[]") (emphasis added).

     In the instant case, the evidence on the record does not clearly
indicate whether Suárez was acting as a private physician or as a
physician participating in the Intramural Plan of the University of
Puerto Rico ("Intramural Plan") in his treatment of Meliá.  Defendant
has submitted evidence tending to show that he was acting as an
employee of the Government in his treatment of Meliá, while
Plaintiffs have submitted evidence tending to show that Suárez was
treating Meliá in his capacity as a private physician.

_____

1.     In his memorandum in support of the motion for summary judgment, Defendant
       focuses his argument around the Puerto Rico Supreme Court case of Rodríguez
       Ruiz, et al v. Hospital San Jorge, 2007 TSPR 5.  In Rodríguez-Ruiz, the Court
       detailed a three pronged test to be used to determine whether a doctor has an
       independent contractor relationship with the Government or whether a doctor is
       an employee of the Government.  Id.  In the present controversy, there is very
       little debate as to whether Defendant Suárez was an employee of the University
       of Puerto Rico.  Instead, the dispositive issue in this case is the second
       aspect of the immunity inquiry, whether, at the time of the alleged
       malpractice, Suárez was treating Meliá as a patient of his private practice or
       as a patient of his employment with the Intramural Plan of the University of
       Puerto Rico.  In Rodríguez-Ruiz, there was no question that the Defendant was
       treating the patient in the context of his work with the Government.  Id.
       Therefore, the three pronged test is not the appropriate focus of the analysis
       in the case at bar.

CIVIL NO. 08-2205 (JP)            -10-

In his motion for summary judgment, Defendant Suárez relies on the fact that he was an attending physician, at all relevant times, participating as part of the Intramural Plan at the University of Puerto Rico ("UPR") Hospital in Carolina and performed the surgery on Meliá at the UPR Hospital.  Also, Defendant relies on the uncontroverted facts that all the medical services rendered to Meliá at the UPR Hospital, for all the relevant times, were charged to her medical plan by the University's Intramural Plan and that all medical equipment, support staff, and facilities used in the medical treatment of Meliá were provided by the UPR Hospital.  Lastly, Defendant Suárez relies on his affidavit which provided that all services rendered to Meliá were within the context of his tenure as Professor of Surgery at the UPR Medical Sciences Campus, that Suárez does not perform bariatric surgery in his private practice, and that Meliá was evaluated and qualified as a candidate for bariatric surgery.

In their opposition to the motion for summary judgment, Plaintiffs point to the evidence in the record suggesting that Suárez was treating Meliá in the context of his private practice. Plaintiffs submitted an affidavit by the sister of Meliá, Sonia Meliá-Rivera.  In the affidavit, Sonia Meliá-Rivera states that Meliá visited Defendant Suárez's office as a private patient and that the surgery eventually performed on Meliá stemmed from the visits as a private patient to Defendant.

CIVIL NO. 08-2205 (JP)          -11-

     Sonia Meliá-Rivera also states that Suárez never told Meliá that he was treating her in connection with his role as a Professor at UPR.  Sonia Meliá-Rivera also stated that Suárez billed Meliá's private medical plan, Triple-S, for services rendered.  This is further supported by the statement from Triple-S submitted by the Plaintiffs.  In this statement, Suárez billed Triple-S for medical assistance rendered to Meliá on more than one occasion.  Plaintiffs' contention that Suárez was treating Meliá as a private patient is further supported by the uncontroverted facts that, on August 14, 2002 and on October 10, 2002, Meliá visited Suárez not at the UPR Hospital, but at his private office.

     Lastly, Plaintiffs contend that the UPR Protocol ("Protocol") for admitting patients to the bariatric surgery program ("program") was not followed and therefore Meliá could not have taken part in the program.  The Protocol requires that to qualify for the program a candidate must be evaluated by the multi disciplinary team that works for the program.  Plaintiffs claim that Meliá was not qualified by the multi disciplinary team, but instead that she was qualified by private doctors.  To support their contentions, Plaintiffs have presented evidence, in the form of medical records, showing that Meliá met with a private radiologist, a private cardiologist, a private geriatrician, and a private sleep medicine specialist in conjunction with her surgery.

CIVIL NO. 08-2205 (JP)            -12-

The evidence in the record is mixed with regard to the question of Suárez's status during the treatment of Meliá.  Facts such as the evaluation of Meliá for the surgery by private doctors, Suárez's billing Meliá's medical plan for medical assistance rendered, and the affidavit of Sonia Meliá-Rivera suggest that Suárez was acting as a private physician.  On the other hand, facts such as Defendant Suárez's affidavit and the billing by the University's Intramural Plan to Meliá's medical plan tend to show that Suárez was acting as an employee of the UPR.  In light of the evidence introduced and the fact that the Court must look at the evidence in the light most favorable to the non moving party, the Court finds that there are genuine issues of material fact for a jury to consider at trial that require the Court to deny Defendant Suárez's motion for summary judgment.

IV.  **CONCLUSION**

In conclusion, the Court **DENIES** Defendant Suárez's motion for summary judgment.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of September, 2009.

                                  s/Jaime Pieras, Jr.
                                  JAIME PIERAS, JR.
                             U.S. SENIOR DISTRICT JUDGE