IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANGÉLICA CRISTINA CARABALLO-MELIÁ, et al., <br><br> Plaintiffs <br><br> v. <br><br> ALBERT SUÁREZ-DOMÍNGUEZ, et al., <br><br> Defendants | CIVIL NO. 08-2205 (JP) |

**OPINION AND ORDER**

Before the Court is Defendant Servicios Médicos Universitarios, Inc.'s ("SMU") motion to dismiss (**No. 184**) for lack of subject matter jurisdiction, and Plaintiffs' opposition (No. 195) thereto. Plaintiffs brought the instant action alleging medical malpractice pursuant to Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141. Defendant then filed a motion to dismiss based on Federal Rule of Civil Procedure ("FRCP") 12(b)(1). For the reasons stated herein, Defendant's motion to dismiss is hereby **GRANTED**.

**I.   FACTUAL ALLEGATIONS**

Plaintiffs in this case are the children of the deceased Verónica Meliá ("Meliá"), who currently reside in Texas and Massachusetts. On October 25, 2002, Meliá, age forty-five, underwent gastric bypass surgery for weight loss, which was performed by Defendant Dr. Albert Suárez-Domínguez ("Suárez") on the premises of

CIVIL NO. 08-2205 (JP)          -2-

Defendant SMU d/b/a Hospital de Área de Carolina, Dr. Federico Trilla.  Plaintiffs claim that Meliá was a private patient of Defendant Suárez.  Defendant Suárez allegedly recommended the surgery to Meliá but then negligently failed to obtain informed consent from her because he did not perform an adequate pre-operatory screening.

After the surgery, Meliá began to show medical complications. On October 28, 2002, a test showed that the anastomosis[1] that was created during the surgery was obstructed.  Meliá suffered from erosive gastritis,[2] bloody vomiting, fast heart rhythm, and pneumonia.  She became acutely ill on November 6, 2002, and through a surgical test, Defendant Suárez found that the gastric pouch had perforated and that Meliá had peritonitis.[3]  After the surgical test, Meliá went into shock and kidney failure.  She remained at Defendant SMU until her death on December 19, 2002.  She had been hospitalized for fifty-two days in total, including fifty days in the intensive care unit.  The autopsy revealed that Meliá died of sepsis,[4] which was secondary to the peritonitis caused by the gastric pouch perforation.

Plaintiffs allege that Defendants failed to properly prepare Meliá for surgery, especially since Meliá did not meet the criteria

---

1.    Junction where one of the small bowel was reunited with the other.

2.    Severe hemorrhagic erosion of the lining of the stomach and intestines.

3.    Inflammation of the tissue lining the wall of the abdomen.

4.    Severe infection that is spread through the bloodstream.

CIVIL NO. 08-2205 (JP)           -3-

established for a gastric bypass procedure.  Plaintiffs allege that Defendant SMU was negligent in allowing untrained physicians to care for the patient, and for not supervising Defendant Suárez.  Further, SMU allegedly failed to perform emergency medical treatment to avoid perforation of Meliá's stomach pouch.

## II.  **LEGAL STANDARD FOR A MOTION TO DISMISS**

Motions brought under Federal Rule of Civil Procedure ("FRCP") 12(b)(1) are subject to the same standard of review as FRCP 12(b)(6) motions.  <u>Torres Maysonet v. Drillex, S.E.</u>, 229 F. Supp. 2d 105, 107 (D.P.R. 2002).  According to the Supreme Court, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1969 (2007).  As such, in order to survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face, not merely conceivable.  <u>Id.</u> at 1974.  The First Circuit Court of Appeal has interpreted <u>Twombly</u> as sounding the death knell for the oft-quoted language of <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Rodríguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 94-95 (1st Cir. 2007), quoting <u>Twombly</u>, 127 S. Ct. at 1969.  Still, a court must "treat all allegations in the Complaint as true and draw all

CIVIL NO. 08-2205 (JP)          -4-

reasonable inferences therefrom in favor of the plaintiff." Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 997 (1st Cir. 1992).

### III. ANALYSIS

Defendant SMU moves for the Court to dismiss the complaint against it, arguing that the Court lacks jurisdiction to grant Plaintiffs the relief requested because it is entitled to Eleventh Amendment Immunity. To support its motion, Defendant has submitted documents beyond the complaint.[5] The Court will now consider Defendant's arguments.

#### A. Eleventh Amendment Immunity

The Eleventh Amendment bars a suit brought in federal courts for monetary damages against states, unless the state being sued waives its immunity or consents to be sued. U.S. CONST. amend. XI. Puerto Rico is considered a state for Eleventh Amendment purposes. Metcalf & Eddy v. Puerto Rico Aqueduct & Sewer Auth., 991 F.2d 935, 939 n.3 (1st Cir. 1993). Eleventh Amendment immunity does not solely protect the state, but also protects arms or "alter egos" of the state. Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Company of the Commonwealth of Puerto Rico, 818 F.2d 1034, 1036 (1st Cir. 1987).

---

5. There are times when a Court can take into consideration documents beyond the complaint in evaluating whether a Fed. R. Civ. P. 12 motion should be granted. Coyne v. Cronin, 386 F.3d 280, 286 (1st Cir. 2004). One such instance is in cases such as this one where there is doubt as to the Court's subject matter jurisdiction. Id. As such, the Court may consider evidence beyond the complaint without transforming the motion into one for summary judgment. González v. U.S., 284 F.3d 281, 288 (1st Cir. 2002).

CIVIL NO. 08-2205 (JP)            -5-

Defendant SMU claims that it is entitled to Eleventh Amendment immunity because it is an arm of the state. Plaintiffs oppose Defendant's claim that SMU is entitled to Eleventh Amendment immunity on the grounds that SMU is not an arm of the state and, if SMU is an arm of the state, on the grounds that SMU waived its immunity.

### 1.  **Arm of the State**

Arm of the state questions often arise with respect to special purpose public corporations, such as SMU, established by the state or its instrumentalities. See Redondo Construction Corp. v. Puerto Rico Highway and Transportation Authority, 357 F.3d 124, 126 (1st Cir. 2004). The entity seeking protection under the Eleventh Amendment bears the burden of proving that it is indeed an arm of the state. Wojcik v. Massachusetts State Lottery Commission, 300 F.3d 92, 99 (1st Cir. 2002).

To resolve arm of the state questions, the Court of Appeal for the First Circuit has developed a two-stage framework. Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico & the Caribbean Cardiovascular Center Corp., 322 F.3d 56, 64-68 (1st Cir. 2003). Under the first prong of Fresenius, the Court must determine whether the state has structured the entity to share its Eleventh Amendment immunity. Pastrana-Torres v. Corporación de Puerto Rico para la Difusión Pública, 460 F.3d 124, 126 (1st Cir. 2006). If the relevant factors conclusively show that it has, Eleventh Amendment immunity applies. Id. However, when the

CIVIL NO. 08-2205 (JP)        -6-

indicia are inconclusive, then the Court must analyze the second prong and determine whether the state's treasury is threatened by the lawsuit. Id.

### i.  *First Prong of* Fresenius

Some of the factors considered in deciding whether SMU is structured to share the Commonwealth's Eleventh Amendment immunity are: (1) whether the relevant law, by its own terms, makes the entity an arm of the sate, or whether it is structured as a separate entity such that it may sue and be sued and has a budget that is independent from that of the Commonwealth; (2) whether the Commonwealth has explicitly claimed or disclaimed responsibility for the entity's debts; (3) whether the entity's functions may be properly characterized as those of the government; (4) whether the agency is separately incorporated; and (5) the degree of control exercised by the state over the entity. Orria-Medina v. Metropolitan Bus Authority, 565 F. Supp. 2d 285, 318-19 (D.P.R. 2007).

The University of Puerto Rico ("UPR") is an entity covered by Eleventh Amendment immunity because it is an instrumentality of the Commonwealth of Puerto Rico. See e.g., Panzardi-Santiago v. University of Puerto Rico, 200 F. Supp. 2d 1, 8 (D.P.R. 2002) (citing Pinto v. Universidad de Puerto Rico, 895 F.2d 18 (1st Cir. 1990)). As such, SMU claims that the motion to dismiss should be granted because the immunity granted to the UPR extends to SMU as an affiliate and/or subsidiary of the UPR.

CIVIL NO. 08-2205 (JP)            -7-

SMU argues that its structure makes clear that it was created with the intent to share in the UPR's sovereign immunity when: (1) SMU was created by virtue of an amendment to the organic law of the UPR; (2) SMU was incorporated by the President of the UPR and the UPR's officials; (3) the President of the UPR also acts as SMU's President; (4) SMU receives monetary contributions from the UPR; and (5) SMU was incorporated as a non-profit corporation which functions as an operational arm or alter ego of the UPR to run and manage the Hospital UPR Carolina, currently known as Hospital Federico Trilla.

Plaintiffs counter that the first prong of Fresenius is not met by SMU because SMU operates with a significant degree of autonomy from the Commonwealth of Puerto Rico and the UPR.  Specifically, Plaintiffs argue that: (1) SMU is a public corporation with a juridical personality that is independent and separate from any other entity, agency, department or instrumentality of the Government of Puerto Rico; (2) SMU has the capacity to sue and be sued, to enter into contracts, and to acquire and maintain property; (3) SMU has complete authority over its expenditures; (4) SMU has authority to raise revenues for its operations by charging users the corresponding fees for the usage of its facilities; (5) SMU has the authority to appoint its officers and agents without interference from other government officials; and (6) SMU is not bound by special legislation, to which other government agencies are part, designed to rule on administrative procedures.

CIVIL NO. 08-2205 (JP)          -8-

The Court notes that this Court has already determined that SMU meets the first prong of <u>Fresenius</u>. <u>Crews & Associates, Inc. v. Corporación de Servicios Médicos Universitarios</u>, No. 06-cv-1562, 2008 WL 3833594, at *8 (D.P.R. July 12, 2008). Even though said opinion is not published, the Court finds its reasoning convincing in that the evidence supports a finding that SMU was structured to share in the Eleventh Amendment immunity of the Commonwealth. To avoid repetitiveness, the Court will not restate the reasoning.

After considering the arguments raised by Plaintiffs, the Court determines that SMU, as a subsidiary and affiliate corporation of the UPR, has been clearly structured to share in the immunity granted to the UPR. Since the Court has determined that the first step in the <u>Fresenius</u> analysis is met, there is no need to reach the second step. <u>Pastrana Torres</u>, 460 F.3d at 126.

### 2. **Waiver of Immunity**

The Eleventh Amendment immunity is a personal privilege which the state may waive at its pleasure. <u>Clark v. Barnard</u>, 108 U.S. 436, 447 (1883). A state can waive its Eleventh Amendment immunity in three ways: (1) by a clear declaration that it intends to submit itself to the jurisdiction of a federal court or administrative proceeding; (2) by consent to or participation in a federal program for which waiver of immunity is an express condition; or (3) by affirmative conduct in litigation. <u>New Hampshire v. Ramsey</u>, 366 F.3d 1, 15 (1st Cir. 2004).

CIVIL NO. 08-2205 (JP)          -9-

The test for finding that a state has waived its Eleventh Amendment immunity is stringent. <u>Acevedo López v. Police Dept. of the Commonwealth of Puerto Rico</u>, 247 F.3d 26, 28 (1st Cir. 2001). A state's consent to suit in federal courts must be "unequivocally expressed." <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 99 (1984). Courts will only find waiver when it is "stated by the most express language or by such overwhelming implications from the text as [will] leave no room for another reasonable construction." <u>Edelman v. Jordan</u>, 415 U.S. 651, 673 (1974) (quotations omitted). "[I]n order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the state's intention to subject itself to suit in *federal court*." <u>Acevedo López</u>, 247 F.3d at 28.

In the instant case, Plaintiffs rely on the language in SMU's certificate of incorporation which states that among the powers granted to SMU are the power to "[f]ile suit or be subject to suit under its corporate name **at any court** and participate in any legal, administrative, arbitration proceedings or any other genre." (emphasis added). Plaintiff argues that this language is demonstrative of a clear intention by the UPR to waive sovereign immunity as to its affiliate, SMU.

After considering the argument, the Court concludes that the language used by the UPR when incorporating SMU did not constitute a waiver of sovereign immunity. The Court notes that Plaintiffs have

CIVIL NO. 08-2205 (JP)          -10-

failed to point to any case law supporting their contention that the "any court" language is sufficient to waive Eleventh Amendment immunity.  On the other hand, this Court has found that similar "any court" language is not sufficient to constitute waiver.  Trans American Recovery Services, Inc. v. Puerto Rico Maritime Shipping Authority, 850 F. Supp. 103, 109-10 (D.P.R. 1994).  Moreover, other Courts have agreed that similar "any court" language is not sufficient to constitute waiver.  See, e.g., Kennecott Copper Corp. v. State Tax Commission, 327 U.S. 573, 577-80 (1946); Jehnsen v. New York State Martin Luther King, Jr., Institute for Nonviolence, 13 F. Supp. 2d 306, 311 (N.D.N.Y. 1998).  As such, the Court concludes that SMU has not waived its right to sovereign immunity because the certificate did not expressly state that SMU could be sued in federal court.

### B. Parties Benefitting from Immunity

Plaintiffs argue that, even if SMU is entitled to immunity, its insurer, Defendant SIMED can still be held liable for a any negligence of SMU.  The Court agrees with Plaintiffs.  Eleventh Amendment immunity is a personal privilege which cannot be transferred or extended by an arm of the state to a third party such as an insurance company.  Rodríguez Díaz v. Sierra Martínez, 717 F. Supp. 27, 31-32 (D.P.R. 1989).  As such, Defendant SIMED could still be held liable for the acts of its insured, SMU, even if SMU is not in the case.  Id.

CIVIL NO. 08-2205 (JP)            -11-

**IV.   CONCLUSION**

Thus, the Court holds that Defendant SMU is entitled to Eleventh Amendment immunity.  In accordance with this Opinion and Order, the Court will enter a separate judgment.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 4th day of March, 2010.

                                                    s/Jaime Pieras, Jr.
                                                      JAIME PIERAS, JR.
                                        U.S. SENIOR DISTRICT JUDGE